# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| |
|---|
| SERIES 15-09-321, a designated series of MSP Recovery Series, LLC, Delaware Entity *Plaintiff*, <br><br> v. <br><br> HARTFORD FINANCIAL SERVICES GROUP, INC ET AL, *Defendants.* |

No. 3:23-cv-1342 (VAB)

## RULING AND ORDER ON MOTION TO DISMISS

Series 15-09-321, a designated series of MSP Recovery Claims, Series LLC, a Delaware entity, ("MSP"[1] or "Plaintiff") has sued The Hartford Financial Services Group, Inc., Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, Hartford Underwriters Insurance Company, and Twin City Fire Insurance Company (collectively, "Defendants") to recover unreimbursed conditional payments under the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y(b)(3)(A) for settlement claims and first-party claims, and for breach of contract, fraudulent concealment, and declaratory relief under 28 U.S.C. § 2201. Complaint, ECF No. 33 (Feb. 6, 2024) ("Amended Compl.")

Defendants have filed a motion dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 37 (Mar. 22, 2024).

For the reasons above, Defendants' motion to dismiss is **GRANTED**.

---

[1] Unless indicated otherwise, this Ruling and Order uses "MSP" to refer to "Series 15-09-321" and "MSP Recovery Claims, Series LLC" interchangeably.

Plaintiff's claims are **DISMISSED** without prejudice for lack of jurisdiction, but without leave to amend.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

#### 1.  *The Medicare Secondary Payer Act*

Medicare provides federal health insurance for individuals over the age of 65 or who have certain disabilities. Through the Medicare Advantage Program, beneficiaries may elect to receive benefits from private insurers, called Medicare Advantage Organizations ("MAOs"), rather than directly from the federal government. 42 U.S.C. §§ 1395w-21 to -29; *see also MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 81 (2d Cir. 2023).

When it was initially implemented in 1965, Medicare "acted as the first payer for many medical services, regardless of whether a Medicare beneficiary was also covered under another insurance plan." *Hereford*, 66 F.4th at 79–80 (quoting *Marietta Mem'l Hosp. Emp. Health Benefit Plan v. DaVita Inc.*, 596 U.S. 880 (2022)). In 1980, however, to reduce rising costs, Congress passed the MSP Act. *Id.* at 80 (citations omitted). "[T]he MSP Act transformed Medicare into 'a back-up insurance plan to cover that which is not paid for by a primary insurance plan.'" *Id.* (quoting *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 69 (2d Cir. 2022)). Under the MSP Act, private insurers, rather than Medicare or MAOs, are primarily responsible for paying covered claims, and Medicare does not pay for medical services where "payment has been made, or can reasonably be expected to be made" under the primary plan. 42 U.S.C. § 1395y(b)(2)(A). A "primary plan" includes "a group health plan or large group health plan, . . . , a workmen's compensation law or plan, [or] an automobile or liability insurance

policy or plan[.]" *Id.* A primary plan is only required to make a reimbursement to Medicare or a MAO "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." *Id.* § 1395y(b)(2)(B)(ii);

If a primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly," Medicare or a MAO may make a conditional payment that the primary plan is required to reimburse. *Id.* § 1395y(B). If a primary plan fails to make payment, either the United States or a private entity may bring suit to recover payment under the MSP Act and recover double damages. *Id.* §§ 1395y(b)(2)(B)(iii), (3)(A).

In addition, a provision of the MSP Act, referred to as Section 111, requires primary insurance plans to provide the identity of the claimant and other information "to enable the Secretary to make an appropriate determination concerning coordination of benefits, including any applicable recovery claim." *Id.* § 1395y(b)(8)(B); *see also Hereford*, 66 F.4th at 81 n.6 ("Because 42 U.S.C. § 1395y(b)(8) was added into the MSP Act by Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, it is often referred to as 'Section 111.'"). Failure to comply with Section 111's reporting requirements may result in civil monetary penalties. 42 U.S.C. § 1395y(b)(8)(E).

### 2. *The Complaint*

This is one of many similar complaints that MSP has brought in this District and nationwide. *See, e.g.*, *Hereford*, 66 F.4th 77; *Series 15-09-321 v. Travelers Companies, Inc.*, No. 3:23-CV-01344 (JCH), 2024 WL 4008240 (D. Conn. Aug. 29, 2024); *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295 (11th Cir. 2022); *Series 15-09-321 v. State Farm Mut. Auto. Ins. Co.*, No. 1:23-CV-22982, 2024 WL 4124245 (S.D. Fla. Aug. 13, 2024), *report and recommendation adopted*, No. 23-22982-CV, 2024 WL 4122116 (S.D. Fla. Sept. 9,

2024); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573 (7th Cir. 2019).

"MSP is a litigation and technology firm that 'own[s] and pursu[es] claims' arising under government healthcare programs on behalf of healthcare organizations and providers, including MAOs. MSP is not itself an MAO, but its assignors are." *Hereford*, 66 F.4th at 82 (citations omitted). MSP alleges that it is "the ultimate assignee of the MAO Assignor's rights to recovery," Am. Compl. at ¶ 13, under an assignment agreement made in 2021 ("Assignment Agreement"). *Id* ¶ 81. In that agreement, allegedly, "the MAO Assignor irrevocably assigned all rights to recover payments made on behalf of its members/enrollees." *Id.*[2] MSP alleges that "[c]onsideration was exchanged" as part of the agreement, and the assigned clams "expressly exclude claims where the MAO Assignor already recovered on the claim or is currently pursuing the claim." *Id.* ¶¶ 82–83.

MSP alleges that "Defendants are property and casualty insurers" that offer insurance nationwide who have primary payer obligations. *Id.* ¶ 31.

Defendants allegedly have both failed to comply with their reporting requirements under Section 111 and failed to reimburse conditional payments made by MSP's MAO Assignor. *Id.* ¶ 56–60. MSP alleges that it "compared the claims data it received from its MAO Assignor to publicly available motor vehicle accident reports to identify instances where Medicare

---

[2] Series alleges that the Assignment Agreement contains the following provision:

> Assignor irrevocably assigns, transfers, conveys, sets over and delivers to Assignee any and all of Assignor's right, title, ownership, and interest in Medicare Advantage Parts A, B, and C payments owed by Responsible Parties pursuant to the MSPA, by and through the following causes of action: (1) actions stemming from the MSPA; (2) breach of contract; (3) pure bills of discovery or equivalent; (4) depositions or discovery before action as set forth by Federal Rule of Civil Procedure 27; (5) subrogation; (6) declaratory action; (7) unjust enrichment, whether known or unknown, or arising in the future (the "Claims").

Am. Compl. ¶ 81

beneficiaries appear to have been involved in crashes. . . . then took that pool of beneficiaries and compared them to Section 111 reports made by Defendants" and determined "numerous instances" where Defendants allegedly failed to report reimbursable claims or withdrew reported claims prematurely." *Id.* ¶ 60. MSP alleges that Defendants have also failed to cooperate with MSP to determine conditional payments that Defendants are required to reimburse under the MSP Act. *Id.* ¶ 61, 74–77.

MSP, allegedly because it cannot otherwise identify conditional payments made by the MAO Assignor that Defendants allegedly were responsible for reimbursing, claims that it used Section 111 reporting and official accident reports to "identif[y] Defendants as the likely primary payers for the conditional payments reflected in the coordination of benefits letter." *Id.* ¶ 62. MSP claims that "[o]nce Defendants notify [the Centers for Medicare and Medicaid Services ("CMS")] under Section 111 that they were primarily responsible for paying medical claims, MSP, through its data servicer" looks for codes of medical procedures "associated with car accident or incident within 0-30 days of the reported date of loss and is able to establish medical claims it has paid for that Defendants should have paid or reimbursed." *Id.* ¶ 64. MSP also asserts that it uses "publicly available official accident reports identifying Defendants as the insurers for the owner and driver of the vehicle that was simultaneously covered by Medicare Advantage Plan issued by Plaintiff's assignor," and claims "Defendants neglected to report [574] accidents to CMS in accordance with Section 111." *Id.* ¶ 69.

MSP further alleges that "Defendants have primary payer obligations under the MSP Act to reimburse MAOs such as MSP's MAO Assignor for medical expenses arising out of an automobile accident involving a Medicare beneficiary in three situations" *Id.* ¶ 33. First, MSP alleges that "Defendants have a contractual obligation to pay under a first-party policy such as

for [Personal-Injury-Protection ("PIP")] or MedPay" no-fault accident coverage ("Contractual claims"). *Id.* Second, Defendants allegedly have primary payer obligations "[w]hen Defendants settled a bodily injury claim made against a third party under either a third-party liability policy or under the uninsured or underinsured motorist coverage provisions of a first-party policy" ("Settlement Claims"). *Id.* And third, MSP alleges that Defendants have primary payer obligations in "hybrid situations" involving both first-party and third-party policies ("Hybrid Claims"). *Id.*

MSP provided seven examples of specific Contractual Claims where it alleges a Defendant submitted a Section 111 report indicating that the Medicare beneficiary's no-fault accident coverage was secondary, and that Defendants' claims center allegedly confirmed the Defendant "made payments relating to [the Medicare beneficiary]'s injuries sustained" in the accident under a PIP policy. *Id.* ¶¶ 99–105.

MSP also provided four examples of Settlement Claims where a Defendant settled a third-party liability claim and submitted a Section 111 report about the settlement. *Id.* ¶¶ 107–110.

MSP further described one example of an unreported claim, where another insurance company, State Farm, filed a Section 111 report, but after MSP sent a demand letter State Farm indicated that Defendants were the Medicare beneficiary's insurer at the time of loss. MSP alleges that Defendants did not file a Section 111 report for this accident. *Id.* ¶ 111.

MSP claims that there are "thousands of other instances exist in which the Defendants has accepted premiums to cover medical expenses arising out of automobile accidents but has chosen to let Medicare and MAOs pick up the tab." *Id.* at ¶ 112. MSP alleges that it is unable to identify all claims because Defendants did not "comply with [their] Congressionally-mandated

obligations to determine when it is a primary plan under the MSP Act and ensure that it has reimbursed all conditional payments." *Id.*

MSP also attached an exhibit to the Complaint that lists 47 policy claims allegedly brought by Medicare beneficiaries who had auto-insurance policies administered by the Defendants where the MAO Assignor allegedly paid certain amounts towards these claims. Exhibit A to Am. Compl., ECF No. 33-1 (Feb. 6, 2024) ("Exhibit A").

Finally, MSP alleges that the statute of limitations for bringing its claims has been tolled by equitable estoppel, fraudulent concealment, and class action tolling due to the pendency of other cases filed against Defendants that have been dismissed. *Id.* at ¶¶ 120–131, 133 (citing *MSP Recovery Claims, Series LLC v. Hartford Financial Services Group, Inc., et. al.*, 20-cv-00305 (D. Conn. 2020), dismissed August 22, 2022; *MSP Recovery Claims, Series LLC v. Hartford Insurance Company of the Midwest*, 1:17-cv-24029 (S.D. Fla. 2017), voluntarily dismissed August 1, 2018; *MSP Recover Claims, Series LLC v. Hartford Accident and Indemnity Company,* 1:17-cv-23858 (S.D. Fla. 2017), voluntarily dismissed May 3, 2018).

### B.  Procedural History

On October 13, 2023, MSP filed its initial Complaint. Complaint, ECF No. 1 (Oct. 13, 2023).

On January 16, 2024, Defendants filed a motion to dismiss and a motion to designate MSP as a vexatious litigant and issue an injunction against future litigation. Mot. to Dismiss, ECF No. 26 (Jan. 16, 2024); Mot. to Designate as Vexatious Litigant, ECF No. 27 (Jan. 16, 2024).

On February 6, 2024, MSP filed an Amended Complaint, which is the operative pleading in this case. Amended Compl.

On March 22, 2024, Defendants filed their motion to dismiss the Amended Complaint. Mot. to Dismiss, ECF No. 37 (Mar. 22, 2024); Mem. in Support of Mot. to Dismiss, ECF No. 37-1 (Mar. 22, 2024) ("Mot. to Dismiss")[3].

On May 10, 2024, MSP filed a memorandum of law in opposition to Defendants' motion to dismiss. Mem. in Opp'n to Mot. to Dismiss, ECF No. 42 (May 10, 2024) ("Opp'n").

On June 7, 2024, Defendants filed a reply in support of their motion to dismiss. Reply in Supp. of Mot. to Dismiss, ECF No. 43 (Jun. 7, 2024) ("Reply").

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293,

---

[3] Where the internal pagination conflicts with the ECF-generated pagination, this Opinion refers to the ECF-generated pagination.

298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "[A] defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Defendants argue that MSP lacks standing to bring its claims because, as to claims against HFSG, MSP may not bring claims against a parent company that does not write insurance, and, as to all Defendants, it fails to plead a valid assignment, fails to plead an injury

caused by Defendants, and fails to plead its claims with specificity. Defendants also argue that MSP's claims fail to state a claim upon which relief can be granted and are time-barred. Mot. to Dismiss at *Id.* at 22, 21.

Because standing is a threshold issue of this Court's jurisdiction over the claim, the Court will consider this issue before addressing other grounds for dismissal. *See Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996) ("Customarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case."); *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." citation omitted)).

### A. Claims Against HFSG

Defendants argue that MSP's claims against Hartford Financial Services Group, Inc. ("HFSG") must be dismissed because it is merely a holding company that does not issue insurance. Mot. to Dismiss at 40–41.

MSP does not address this argument in its response.

The Court agrees with Defendants.

MSP alleges that Hartford Financial Services Group, Inc. is "a financial holding company for a group of insurance subsidiaries that issue property and casualty, liability, and no-fault policies." Compl. ¶ 14. While acknowledging that HFSG is merely "a financial holding company," MSP claims that it "believes [HFSG] has reported under Section 111 that it or one of the subsidieries [sic] is a primary payer for one of the claims asserted herein." *Id.* Under the MSP Act, however, a "primary plan" includes "a group health plan or large group health plan, . . . , a

workmen's compensation law or plan, [or] an automobile or liability insurance policy or plan[.]" 42 U.S.C. § 1395y(b)(2)(A). Because HFSG is merely a holding company that does not issue insurance, it does not administer a "primary plan" or have primary payer obligations under the MSP Act, and thus may not be sued to recover claims that its subsidiaries allegedly owe to MSP's MAO Assignor.[4] *See SFA Folio Collections, Inc. v. Bannon*, 585 A.2d 666 (Conn. 1991), *cert. denied*, 501 U.S. 1223, (1991) ("[I]t is a fundamental principle of corporate law that the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares in the subsidiary and the two enterprises have identical directors and officers.") (citation and internal quotation marks omitted).

Accordingly, MSP's claims against HFSG must be dismissed.

## B. Article III Standing

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("The doctrine [of standing] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."). Standing generally requires a plaintiff to establish: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). It is "settled" that the legislature "cannot erase Article

---

[4] In addition, even accepting as true MSP's assertion that HFSG "reported under Section 11 that it . . . is a primary payer," as discussed below, the Second Circuit has held that Section 111 reporting is not an admission of liability, and does not provide a basis for causation and injury necessary to confer standing. *See Hereford*, 66 F.4th at 89.

III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 578 U.S. at 339 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima[.]").

"Standing, moreover, like other jurisdictional inquiries, cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *Thompson v. Cty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citation, internal quotation marks and alterations omitted). "The burden of establishing standing falls on the plaintiff, as it 'functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake.'" *MHANY Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016).

Defendants argue that MSP fails to allege an injury because (1) its injuries are premised on Section 111 reporting, which the Second Circuit has held to be an improper basis to confer standing, and (2) it has failed to plead a valid assignment of claims.

The Court will address each argument in turn.

## 1. Section 111 Reporting

In *Hereford*, MSP brought similar claims against Hereford Insurance Company ("Hereford") alleging that Hereford failed to reimburse conditional payments made by MSP's MAO Assignor. *See Hereford*, 66 F.4th at 84–85 ("MSP alleges that: (1) . . . MSP's [MAO] assignor, paid for certain medical expenses incurred by N.G.; (2) when those expenses were incurred, N.G. was insured by a no-fault policy issued by Hereford; (3) Hereford reported to CMS that N.G. received these medical services, and, by doing so, admitted that Hereford was primarily responsible for those costs; and (4) Hereford did not reimburse [the MAO Assignor].")

As here, MSP linked the causation element of their injury to the insurance company's Section 111 reporting. The Second Circuit concluded that MSP's theory of "injury-in-fact and causation rise and fall together . . . . because MSP alleges that it made payments that were reimbursable specifically by Hereford, and the only fact it alleges to justify that its payments were both reimbursable generally and reimbursable by Hereford in particular was that Hereford reported the claims to CMS under Section 111." *Id*. at 85.

The Second Circuit found that this theory was insufficient to allege standing, however, because "the plain language of Section 111 tells us that when a no-fault insurance provider such as Hereford reports a claim pursuant to Section 111, it does not thereby admit that it is liable for the claim." *Id*. at 89.  The Second Circuit explained that filing a Section 111 report indicates that "the claimant is entitled to benefits under the MSP Act," but this "can mean benefits to be paid by a primary plan, by Medicare itself, by an MAO, or by another source: all such payments may be obligations owed 'under' the MSP Act." *Id*. at 87. The Second Circuit "conclude[d] that an insurer's report under Section 111 does not admit the insurer's liability for the claim reported." *Id*. Accordingly, the court found that MSP failed to allege a "concrete" or "actual" injury or an injury fairly traceable to the Defendant, and lacked standing to bring its exemplar claims, the claims listed in its exhibit, or the unpled class claims that reply on this theory of injury and causation. *Id*. at 89.

District courts in this Circuit, applying *Hereford*, have dismissed suits brought by MSP that allege theories of standing premised on Section 111 reporting, even where MSP attempted to distinguish *Hereford*'s holding. In *MSP Recovery Claims, Series LLC v. Travelers Indemnity Co.,* this Court rejected MSP's arguments that providing the relevant policy numbers, and additional allegations such as "(1) a specific allegation that the primary plan has resolved the

reported claim arising under the identified insurance policy; (2) detailed allegations that a [MAO] also made payments for medical expenses arising out of the automobile accident covered by the identified insurance policy; and (3) detailed descriptions of each coded procedure for which the MAO made payment showing that the medical expenses paid by the MAO related to the automobile accident" distinguished *Hereford*, and found that the *Hereford* complaint contained these same factual allegations. *Travelers Indemnity*, 2023 WL 4744753, at *6–7. The court likewise rejected MSP's argument that the Second Circuit failed to consider whether the insurance provider's contractual obligations could be used to establish standing—finding that the Hereford court did consider and rejected that argument—as well as MSP's argument that "the Second Circuit in *Hereford* conflated the terms 'liability' and 'responsibility' under the MSP Act," noting that this Court is bound by the Second Circuit's holding. *Id.*

MSP has argued that *Hereford*'s holding is limited to no fault insurance policies, and, under *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66 (2d Cir. 2022), entering into a settlement agreement is sufficient to establish liability. At least one court in this Circuit, in denying a motion for reconsideration, found that allegations that the Defendants entered into a settlement agreement were sufficient to establish standing at the pleading stage. *MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Corp.*, No. 19-CV-524 (JLS) (JJM), 2024 WL 4092896, at *2 (W.D.N.Y. Aug. 1, 2024) (*citing MSP Recovery Claims, Series 44 LLC v. Hanover Ins. Grp. Inc.*, No. CV 22-40087-FDS, 2023 WL 6160457, at *8 (D. Mass. Sept. 21, 2023) and *MSP Recovery Claims Series 44, LLC v. Bunker Hill Ins. Co.*, 683 F. Supp. 3d 172, 179 (D. Mass. 2023)). But other courts in this District and the Southern District of New York have rejected this argument and found that *Hereford*'s holding applies to settled claims. *Travelers Companies*, 2024 WL 4008240, at *5 (distinguishing *Aetna Life Ins. v. Big Y Foods*

and noting "all the exemplars involving settled claims invoke section 111 reports to allege

Travelers is responsible for reimbursing MAO for conditional payments"); *MSP Recovery*

*Claims, Series LLC v. Endurance Am. Specialty Ins. Co.*, No. 1:22-CV-6684 (MKV), 2024 WL

4336316, at *8 (S.D.N.Y. Sept. 27, 2024)  ("This case is not similar to *Big Y Foods*, factually or

procedurally. Rather, this case is similar to other cases in which district courts have dismissed for

lack of standing, notwithstanding MSP's allegation that the defendant entered into a settlement

agreement.").

Defendants argue that here, "[MSP] again improperly rests its injury allegations for the

exemplar claims on Defendants' Section 111 reporting," a theory that the Second Circuit rejected

in *Hereford*, and thus MSP lacks standing to bring its claim. Mot. to Dismiss at 32–33.

MSP admits that it "does, to some extent, rely on Hartford's Section 111 reporting to

establish injury" but argues that it nonetheless has standing for several reasons: (1) *Hereford*

dealt only with no-fault insurance reporting, not settlement-based reports (citing *Aetna*, 52 F.4th

at 76); (2) it provided additional details not considered in *Hereford*—namely, (a) "the primary

plan settled the reported claim," (b) "MSP's MAO-Assignor also made payments on the same

claim Hartford settled," (c) "admissions from Hartford that its insurance policy covered the

injuries paid for by the MAO-Assignor," and (d) "descriptions of medical procedures for which

the MAO made payment"—and (3) the *Hereford* court did not consider "whether [] allegations

of a contractual obligation could establish responsibility" Opp'n at 11–14.

In reply, Defendants argue that *Hereford*'s holding extends to Settlement Claims, and the

arguments MSP raises were rejected in *Hereford* and the court's opinion in *Travelers*. Reply at 9

(citing *Travelers Indemnity*, 2023 WL 4744753).

The Court agrees.

MSP does not dispute that its no-fault insurance Contractual Claims, which are clearly premised on Section 111, fall squarely within *Hereford*'s holding. *See* Am. Compl. ¶ 91 ("Specifically, CMS uses what is reported through Section 111 to identify whether any claims that Medicare either receives or pays are related to an automobile accident."); *id.* ¶¶ 99–105 ("[Defendant's] Section 111 report for [claimant] admits the following details about the claims"); *id.* ("the MAO paid for treatment of accident injuries that are either the same as, or similar to, the injuries that [Defendant] reported pursuant to Section 111."). Because the Second Circuit has held that "when a no-fault insurance provider . . . reports a claim pursuant to Section 111, it does not thereby admit that it is liable for the claim" and thus MSP may not rely on these assertions for standing, MSP lacks standing to bring its Contractual Claims. *See Hereford*, 66 F.4th at 89 ("Because MSP's argument that the payments made by EmblemHealth are reimbursable by Hereford rests entirely on its proposed interpretation of Section 111, MSP has not adequately alleged a 'concrete' or 'actual' injury or that the injury it alleges is fairly traceable to Hereford. It therefore lacks standing to bring the N.G. exemplar claim.").

In fact, MSP's "unreported" claim exemplifies the insufficiency of Section 111 reporting. There, another insurer allegedly filed a Section 111 report for the accident, but allegedly later informed MSP that the claimant was actually insured by one of the Defendants at the time of the accident. Am. Compl. ¶ 111. Nevertheless, MSP relies on Section 111 reports from CMS for its allegations that the exemplar claimants were insured under Defendants' policies at the time of the accident. Am. Compl. ¶ 101(a) n.13 (noting that MSP cannot determine which Hartford entity issued the policy because "of the manner in which the responsible Hartford entity reported to CMS.").

MSP argues, however, that it includes additional factual allegations not present in *Hereford*, and that the *Hereford* court did not consider if an insurer's contractual obligations may establish liability. As to the latter argument, "[t]his court has previously considered this argument and concluded that *Hereford* implicitly rejected this contention." *Travelers Companies*, 2024 WL 4008240, at *5 (citing *Travelers Indemnity*, 2023 WL 4744753, at *6–7); *see Travelers Indemnity*, 2023 WL 4744753, at *6–7 ("Additionally, MSP claims that the *Hereford* Court did not address 'whether allegations of an actual contractual obligation ... could establish responsibility for pleading purposes.' This argument overlooks that such an allegation was made in *Hereford*, and that this same argument was advanced by MSP on appeal. Thus, the Second Circuit implicitly denied this theory by dismissing MSP's claims for lack of standing." (citations omitted)).

As to the former, this argument has been rejected before, and analogous factual allegations that (a) "MSP's MAO-Assignor also made payments on the same claim Hartford settled," (b) "admissions from Hartford that its insurance policy covered the injuries paid for by the MAO-Assignor," (c) "descriptions of medical procedures for which the MAO made payment" were insufficient, given MSP's ultimate reliance on Section 111 reporting to establish causation and injury. *See Travelers Indemnity*, 2023 WL 4744753, at *6–7 (allegations such as "(1) a specific allegation that the primary plan has resolved the reported claim arising under the identified insurance policy; (2) detailed allegations that a [MAO] also made payments for medical expenses arising out of the automobile accident covered by the identified insurance policy; and (3) detailed descriptions of each coded procedure for which the MAO made payment showing that the medical expenses paid by the MAO related to the automobile accident[,]" were made in the *Hereford* Complaint."); *compare, e.g.*, Am. Compl. ¶ 99(f) ("S.R.'s medical

providers billed the MAO Assignor $4,136.00 for the above accident-related treatment and the

MAO Assignor paid $167.28 for treatment of S.R.'s accident-related injuries"); ¶ 99(h)

("Plaintiff's data servicer spoke via telephone with Hartford's claims center concerning the S.R.

claim, where Hartford confirmed that it made payments relating to S.R.'s injuries sustained on

November 5, 2019 pursuant to a first party MedPay policy."); *and* ¶ 99(b) ("As a result of the

accident, S.R. suffered injuries to her brain, head, neck, and spine. On November 6, 2019, S.R.

received treatment for those injuries"); *with* Hereford Am. Compl. ¶ 61 ("The medical providers

billed and charged EHTH $577.00 for or those items and services, and EHTH paid $55.00 for

those items and services."); ¶ 62 ("By virtue of its no-fault insurance policy, which covered A.B.

for the accident related medical expenses detailed herein, Defendant is a primary payer

responsible for payment and/or reimbursement of A.B.'s accident-related medical expenses.");

*and* ¶ 59 ("A list of the diagnosis codes ascribed to A.B.'s accident-related injuries and the

associated procedures rendered in treatment of those injuries is attached hereto as **Exhibit D**.").

As a result, MSP's Contractual Claims, which primarily rely on Section 111 reporting, fail to

establish standing.

      Consistent with prior decisions from this Court and in this Circuit, because MSP's

Settlement Claims are premised on information gleaned from Section 111 reporting, *see, e.g.*,

Am. Compl. ¶¶ 107(i) ("Hartford Fire Insurance Company's Section 111 report for D.G. admits

the following details about the claims"); 107(f) ("the MAO Assignor paid for treatment of

accident injuries that are either the same as, or similar to, the injuries that Defendant Hartford

Fire Insurance Company reported pursuant to Section 111."); these claims likewise fail to

establish standing. *See Travelers Companies*, 2024 WL 4008240, at *5 (dismissing settlement-

based claims for lack of standing and finding "a review of MSP's Amended Complaint because

all the exemplars involving settled claims invoke section 111 reports to allege Travelers is responsible for reimbursing MAO for conditional payments.").

While MSP relies on *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66 (2d Cir. 2022) to support the assertion that "a settlement establishes a primary plan's 'responsibility' even if the primary plan does not admit 'liability,'" as another court in this District noted previously, "[n]ot once does the *Aetna* Amended Complaint invoke section 111 reports as a basis for the defendants' liability" as MSP does here. *Travelers Companies*, 2024 WL 4008240 at *4.

Nor is it sufficient that Defendants allegedly made payments as part of settlement agreements or first-party policies. As courts have noted, caution is warranted when relying on MSP's conclusory assertions of an insurer's liability to reimburse medical costs. Apart from the fact that Section 111 reporting does not establish liability, courts have found MSP lacked standing to bring claims where it failed to "adequately allege[] that the medical care provided to the exemplar patients was for injuries that would have been covered by the insurance policies or settlement agreements allegedly issued or entered into by Defendants." *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, No. 20-CV-2102 (VEC), 2021 WL 1164091, at *12 (S.D.N.Y. Mar. 26, 2021); *see also Endurance*, 2024 WL 4336316, at *8 (collecting cases); *MSP Recovery Claims, Series 44, LLC v. Quincy Mut. Fire Ins. Co.*, No. 22-CV-11271-DJC, 2023 WL 4107038, at *12 (D. Mass. June 21, 2023) ("As an initial matter, MSPRC 44 alleges no facts regarding the type of insurance Defendants' insured had or regarding the settlement Defendants allegedly entered into with M.H. and J.O., respectively. Without such information, it is unclear whether certain medical expenses might have been excluded from insurance coverage or the settlements.").

MSP does not allege that the injuries that the MAO Assignor reimbursed were actually covered under Defendants' insurance policies. *See, e.g., AIG*, 2021 WL 1164091, at *6 ("Defendants give several examples of claims that were reported to CMS but the costs of the medical services associated with the claims were properly incurred by the MAO and were not reimbursable by the primary payer."). Rather, MSP merely alleges that "the MAO paid for treatment of accident injuries that are either the same as, or similar to, the injuries that [Defendants] reported [under] Section 111" Am. Compl. ¶¶ 99(f), 107(f) and that the Defendants "made payments relating to [claimant's] injuries," *id.* ¶ 99(h) or settled the claim, *id.* ¶ 107(h). Thus, it is not evident that the Defendants were responsible as primary payers under the MSP Act for the amount allegedly paid by the MAO Assignor, which, in MSP's examples, represents a fraction of the price billed to the MAO Assignor. *See, e.g.* Am. Compl. ¶ 99(f) ("S.R.'s medical providers billed the MAO Assignor $4,136.00 for the above accident-related treatment and the MAO Assignor paid $167.28 for treatment of S.R.'s accident-related injuries."). As another court in this Circuit noted about similar claims: "The bare allegation of the existence of a settlement is not sufficient to allege that Endurance is responsible for reimbursing Emblem for all of N.B.'s accident-related injuries." *Endurance*, 2024 WL 4336316 at *8; *see Cortlandt*, 790 F.3d at 417 ("The plaintiff bears the burden of 'alleg[ing] facts that affirmatively and plausibly suggest that it has standing to sue.' (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir.2011) (alteration in original)); *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (citation omitted)).

Accordingly, MSP's Contractual Claims, no-fault and settlement exemplar claims, all fail to establish the injury and causation necessary for standing, as do MSP's additional claims—the

"unreported" exemplar claim, the alleged "thousands" of additional claims and the 47 alleged claims in Exhibit A—which are not pled with the particularity of the exemplar claims, and, in the case of the "thousands" of additional claims and 47 claims in Exhibit A, rely on Section 111 reporting to establish liability. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").

## 2.  The Assignment Agreement

It is a "well-established principle that '[l]awsuits by assignees . . . are cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l,* 790 F.3d 411, 418 (2d Cir. 2015) (quoting *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008)) (internal citation omitted) (alteration in original); *see also W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) ("Courts may permit a party with standing to assign its claims to a third party, who will stand in the place of the injured party and satisfy the constitutional requirement of an 'injury-in-fact.'"). "To assign a claim effectively, the claim's owner 'must manifest an intention to make the assignee the owner of the claim.'" *Cortlandt*, 790 F.3d at 418 (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir.1997)). MSP thus may achieve standing through pleading a valid assignment agreement.

Defendants argue that MSP lacks a valid assignment of claims because it fails to identify the MAO assignor and has not filed the assignment agreement. Defendants also argue that MSP's allegations that the carve outs in the assignment agreement do not apply are conclusory and thus insufficient to establish the applicability of the assignment agreement to its claims.

In response, MSP argues that it cannot reveal the MAO Assignors name under "[a] separate data service agreement with [the] MAO Assignor [that] contains a provision requiring that the identity of the Assignor remain confidential," Am. Compl. ¶ 80 n.10, but that Defendants are aware of the MAO Assignor because Defendants' general counsel emailed the MAO Assignor, and it attached a redacted version of this email to the Complaint. Opp'n at 5–6. MSP further states that it will reveal the assignor's name under seal if directed to do so by the Court. Opp'n at 5–6; Am. Compl. ¶ 80 n.10. MSP also alleges that it is not required to attach the assignment agreement, and it "pleads adequate facts to establish that the exemplar claims were not carved out of the assignment" Opp'n at 6–7.

In reply, Defendants argue that whether they "should be able to divine the assignor based on various tea leaves is entirely irrelevant to whether MSPRC has adequately pled standing," because MSP was obligated to, at minimum, plead the party to the assignment agreement in its Complaint. Reply at 6.

The Court agrees.

It is not enough for MSP to make conclusory allegations regarding the validity of its assignment agreement. "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record. And it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citations omitted). Moreover, the Court need not defer to MSP's interpretation of the alleged assignment agreement. *Leichter v. Lebanon Bd. of Educ.*, 917 F. Supp. 2d 177, 185 (D. Conn. 2013) ("Where there is clear and definitive contract language, the scope and meaning of that language is not a question

23

of fact but a question of law." (quoting *Schwartz v. Fam. Dental Grp., P.C.*, 943 A.2d 1122, 1126–27 (Conn. App. Ct. 2008)).

While MSP may bring a claim on behalf of a MAO Assignor under a valid assignment agreement, MSP has failed to provide an essential term of the agreement—the name of the MAO assignor. Several courts have dismissed MSP's claims where it failed to name the identity of its MAO Assignor, finding this to be a necessary prerequisite to pleading a valid assignment agreement. *Series 15-09-321 v. Liberty Mut. Ins. Co.*, No. 23-CV-12382-RGS, 2024 WL 869447, at *2 (D. Mass. Feb. 29, 2024) ("MSP does not identify the other party to the purported assignment agreement and thus has failed to allege the existence of a valid contract."); *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*, 281 F. Supp. 3d 1278, 1283 (S.D. Fla. 2017) ("Plaintiffs fail to allege the identity of the MAOs whose reimbursement rights they claim to own, the dates of the assignments, or the essential terms."); *MSP Recovery Claims, Series LLC v. Am. Fam. Connect Prop. & Cas. Ins. Co.*, No. 23-20132-CIV, 2023 WL 3276792, at *3 (S.D. Fla. May 5, 2023) ("The name of its assignor is an essential term of the alleged assignment agreement, and MSP Recovery fails to plead it."); *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. CV 17-2557-AB (FFMX), 2017 WL 5086293, at *4 (C.D. Cal. Nov. 2, 2017) ("The Court is not obliged to accept as true Plaintiffs' legal conclusions that the assignments exist and are valid; Plaintiffs must allege facts sufficient to support these contentions, such as the identity of the MAOs whose reimbursement rights they claim to own, the dates of the assignments, and the essential terms."); *but see MAO-MSO Recovery II, LLC v. Gov't Emps. Ins. Co.*, No. PWG-17-711, 2018 WL 999920, at *7 (D. Md. Feb. 21, 2018) ("Plaintiffs do not name the MAOs or state when the rights were assigned. But they do, however, assert in the No-Fault Case that, 'the name of Medicare Beneficiary, as well as the corresponding MAO, Full Risk

Payer and/or their assignee(s), shall be provided to the Defendant upon execution of a qualified protective order.'") The reasoning of these opinions is persuasive and put MSP on notice of the importance of pleading the identity of its MAO Assignor, and MSP did not move to enter a protective order or file this information under seal.[5]

Accordingly, Series has failed to establish standing to pursue its claims. Though MSP contends that it will submit the MAO Assignor's name if directed to do so, *see* Opp'n at 6, as discussed above, even if MSP adequately pleads an assignment of claims, it fails to establish injury and causation sufficient to confer standing.

### C. Timeliness

The MSP Act establishes a three-year statute of limitations for claims brought by the Government. 42 U.S.C. § 1395y(b)(2)(B)(iii) ("An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed."). "A majority of the courts . . . have applied the three-year statute of limitations from the government's cause of action to private causes of action." *MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*, No. 2:21-CV-1901, 2022 WL 3572439, at *3 (S.D. Ohio July 25, 2022) (collecting cases). "The statute of limitations begins to run when [CMS], not an MAO, is provided with notice." *MSP Recovery Claims, Series LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 3:20-CV-305 (OAW), 2022 WL

---

[5] Though at this stage the Court accepts as true MSP's allegations that it would provide the MAO Assignor's name if the Court required it to do so, and that its MAO Assignor is, in fact, a MAO under the MSP Act, in prior litigation MSP has not been so forthcoming. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 579 (7th Cir. 2019) (noting that, in a MSP case, "[e]ven after the district court issued a protective order, plaintiffs still failed to disclose the name of the assignor Medicare Advantage Organization," and when plaintiffs finally did so, "there was a new problem: it was not clear that HFAP qualified as a Medicare Advantage Organization," at which point, MSP asserted that "Health First Health, which had never been mentioned in the Central Illinois case, not HFAP, was the entity that paid the unreimbursed medical costs.").

3585782, at *8 (D. Conn. Aug. 22, 2022), *appeal withdrawn*, No. 22-2082, 2023 WL 6618115

(2d Cir. Jan. 9, 2023) (quoting *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No.

217CV02522CASPLAX, 2019 WL 3500285, at *2 (C.D. Cal. Aug. 1, 2019)).

Defendants argue that all but one of MSP's claims are time-barred under the MSP Act's

three-year statute of limitations. It further argues that MSP's tolling arguments premised on

fraudulent concealment and the pendency of a prior class action fail because Defendants reported

the claims to CMS, and thus did not attempt to conceal them, and that class action "tolling does

not apply to the named plaintiff in the prior class action." Mot. at 38–39.

MSP argues that its claims are timely because the Second Circuit has held that a six-year

statute of limitations applies to private actions brought under the MSP Act. Opp'n at 14 (citing

*Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 398 (2d Cir. 2001)).

In reply, Defendants argue that *Manning* was decided before the MSP Act was amended

to include a three-year statute of limitations for actions brought by the Government, which this

Court and others have held applies to private claims. Reply at 10–11. In addition, they argue that

because MSP did not dispute that a three-year statute of limitations applied in prior cases, they

are collaterally estopped from asserting that a six-year statute of limitations applies here.

The Court agrees.

When the Second Circuit decided *Manning*, "[f]ederal courts [were required to] establish

the appropriate statute of limitations for private actions brought under the MSP, as Congress has

not specified which limitations period applie[d]," 254 F.3d at 392, because the MSP Act did not

adopt a statute of limitations for actions brought by the Government. *Compare* 42 U.S.C. §

1395y(b)(2)(B)(ii) (2001) (no statute of limitations specified); *with* § 1395y(b)(2)(B)(iii) (2013)

("An action may not be brought by the United States under this clause with respect to payment

owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed."). In *Manning*, the Second Circuit followed the principle that: "when Congress does not supply a statute of limitations to a federally created statutory cause of action, . . . 'courts apply the most closely analogous statute of limitations under state law," but "decline to borrow a state statute of limitations [] when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Manning*, 254 F.3d at 393 (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989)). Because, at that time, the MSP Act did not provide the relevant statute of limitations, the Second Circuit, borrowing from the most closely analogous federal limitations period, adopted the False Claims Act's six-year limitations period. *Manning*, 254 F.3d at 394 ("[W]e find that the strict requirements of the Reed/Phelan exception are met, and hold that the six-year statute of limitations applicable to private rights of action under the False Claims Act").

In 2013, however, Congress amended the MSP Act to include a three-year statute of limitations. 42 U.S.C. § 1395y(b)(2)(B)(iii) (2013) ("An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed."). As a result, "a majority of courts have now held that a three-year statute of limitations applie[s] to the MSP Act. *Nationwide*, 2022 WL 3572439, at *3 (collecting cases). Thus, applying the Second Circuit's reasoning in *Manning*, while a six-year statute of limitations appropriately adopted the closest federal analogy to the MSP Act before its amendment, for cases accruing after the amendment of

the MSP Act, the three-year statute of limitations for government actions is the closest federal analog for the MSP Act's private cause of action. Here, the Complaint alleges that the critical facts relevant to its exemplar claims took place well after 2013, and thus a three-year statute of limitations applies to its claims.[6]

Although MSP argues that the statute of limitations has been tolled because Defendants concealed their obligations and therefore are estopped from relying on the statute of limitations, Am. Compl. ¶ 114–31, and due to the pendency of prior class actions, *id.* ¶ 132–34, these arguments are unpersuasive. At least as to the exemplar claims for which Section 111 reports were filed discussed in paragraphs 99–105 and 108–110 of the Amended Complaint, MSP alleges that Defendants filed Section 111 reports with CMS including details of the claims. *See* Am. Compl. ¶¶ 99–105; 108–110. As a result, MSP's theories of fraudulent concealment and equitable estoppel are not supported by the allegations in the Complaint, where Defendants reported these exemplar claims to CMS "to enable the Secretary [or MAOs] to make an appropriate determination concerning coordination of benefits, including any applicable recovery claim." 42 U.S.C. § 1395y(b)(8)(B).

---

[6] While the Court need not and does not reach the issue of collateral estoppel, MSP is arguably collaterally estopped from challenging the statute of limitations here. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) ("Collateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a full and fair opportunity to litigate ... in [a] prior proceeding and where the decision of the issue was necessary to support a valid and final judgment on the merits in the first action." (alterations in original)); *Lighthouse Landings, Inc. v. Connecticut Light and Power Co.*, 15 A.3d 601, 613 (Conn. 2011) ("An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined," and "is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered."). MSP had a full and fair opportunity to litigate the statute of limitations issue in a previous case brought before this Court, but chose not to challenge the three-year limitations period that resulted in the dismissal of one of its claims. *Hartford*, 2022 WL 3585782, at *8 ("Accordingly, the court finds that the C.R. claim is time-barred under the MSP's three-year statute of limitations"). As a designated series of MSP Recovery Claims, Series LLC, is in privity with its related entity, *see Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995) ("In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion."), and thus is likely precluded from disputing the applicability of a three-year statute of limitations.

In addition, while the Supreme Court's decision in *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) "tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails. . . . *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech v. Michael H. Resh*, 584 U.S. 732, 736 (2018). MSP had ample opportunity to join the suits of its related entities, and may not "piggyback on an earlier, timely filed class action" to avoid dismissal of its time-barred claims. *See China Agritech v. Michael H. Resh*, 584 U.S. 732, 740 (2018) ("We hold that American Pipe does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action. The 'efficiency and economy of litigation' that support tolling of individual claims, do not support maintenance of untimely successive class actions; any additional class filings should be made early on, soon after the commencement of the first action seeking class certification." (citing *American Pipe*, 414 U.S. at 553)).

Accordingly, even if MSP had standing to bring its claims, they are time-barred because MSP filed its Complaint on October 13, 2023, and the initial Section 111 report for the exemplar claims set forth in paragraphs 99–105 and 108–110 of the Amended Complaint were filed more than three years before this date, *i.e.*, before October 12, 2020. While one exemplar claim of MSP's is not time-barred, Am. Compl. ¶ 107, MSP still lacks standing to bring this claim as discussed above.[7]

---

[7] The Court may properly consider the dates on which the Section 111 reports were filed, *see* Exhibit F to Mot. to Dismiss, ECF No. 37-7 at 5, because the reports are "integral" to the Amended Complaint. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [a court] may consider its contents even if it is not formally incorporated by reference." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (alteration in original)); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss").

### D.  Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)."). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff]

leave to amend." (citing *Ellis*, 336 F.3d at 127)).

MSP has filed dozens of suits in this District and countless others nationwide. As the
Second Circuit noted in *Hereford*, "[t]he complaints in each of these dismissed cases are
substantially similar and yet MSP has made no meaningful efforts of which we are aware to
amend its standing allegations either in the complaint or the amended complaint filed in this
case." *Hereford*, 66 F.4th at 91. Despite being aware of the standing defects discussed here, MSP
and its related entities have repeatedly filed Complaints relying on these theories of standing
without offering additional factual or legal bases, even after the Second Circuit's ruling in
*Hereford. See Travelers Indemnity*, 2023 WL 4744753 ("MSP should have been 'on notice from
the outset that the issue of standing would be front and center' in this case, especially because the
District Court's Ruling in Hereford—which dismissed the operative Complaint for lack of
standing—was issued more than seven months before the filing of the first Complaint in this
case." (citing *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2019 WL
6311987, at *9 (C.D. Ill. Nov. 25, 2019), *aff'd*, 994 F.3d 869 (7th Cir. 2021))).

Accordingly, the Court will deny leave to amend. *See City of Pontiac Policemen's &
Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) ("Plaintiffs have already had
one opportunity to amend their complaint. Although that amendment was not in response to a
motion to dismiss identifying particular deficiencies in the pleadings, it is unlikely that the
deficiencies raised with respect to the Amended Complaint were unforeseen by plaintiffs when
they amended. Moreover, plaintiffs have identified no additional facts or legal theories—either
on appeal or to the District Court—they might assert if given leave to amend. We conclude that,
in the circumstances presented, the District Court did not err in denying leave to amend.");
*Hereford*, 66 F.4th at 90–91 (holding district court did not abuse discretion in denying leave to

amend given MSP's repeated "failure to cure" (citing *Denny v. Barber*, 576 F.2d 465, 471 (2d

Cir. 1978) and *City of Pontiac*, 752 F.3d at 188)).


**IV.    CONCLUSION**

For the reasons above, Defendants' motion to dismiss is **GRANTED**.

Plaintiff's claims are **DISMISSED** without prejudice for lack of jurisdiction, but without

leave to amend.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 22nd day of November, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE